IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAITLIN CORRIGAN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>TRUSTEES OF BOSTON UNIVERSITY, )<br>)<br>Defendants ) | DOCKET NO: 22-cv-10443-DJC |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Trustees of Boston University ("Defendants") have moved to dismiss Plaintiff Caitlin Corrigan's disability-based complaint, a complaint rooted in Defendants' imposition of an inflexible Covid-19 testing requirement and their refusal to comply with federal law. Defendants base their motion to dismiss on the fact that the University ended its "asymptomatic Covid-19 testing" requirement on May 23, 2022 (announced on March 23, 2022), only months after Caitlin Corrigan ("Plaintiff") filed her lawsuit on or about March 23, 2022. After refusing to engage in any dialogue with Plaintiff or her attorneys over the issue for months, and after suspending her from the University for an entire academic year, Defendants now declare the issues raised in her complaint to be moot. Plaintiff contends, for reasons stated below, that the issue is not moot and would not become moot until the Defendants admit that the policy was unjustifiable and unlawful under the Americans with Disabilities Act, and Defendants initiate steps to allow for the Plaintiff's unfettered and unencumbered return to the campus. This has emphatically not happened, and Plaintiff's suspension remains in place.

The Plaintiff requests that this Court DENY the Motion to Dismiss and that the Plaintiff be allowed to commence discovery on very specific issues which are very likely to change the tenor of this case from a simple claim under the Americans with Disabilities Act to a more complex case relating to deeper grievances and animus which Boston University's employees held against the Plaintiff and which may have resulted in those employees using the ADA as a tool of retaliation and abuse.

On June 4, 2022, shortly after Children's Health Defense posted a press-release pertaining to this lawsuit, Children's Health Defense received a disturbing anonymous email (attached as Exhibit A) that appears to be from a whistleblower within Boston University which disputes the notion that Boston University's policy of excluding the Plaintiff from Boston University based on her disability to use a prescribed testing method, without an alternative method, either did not exist, or was fabricated for the purposes of retaliation against the Plaintiff. In other words, the refusal to provide accommodation under the ADA was not simply "unreasonable" but "tactical."  Indeed, the whistleblower suggests that the very individuals who denied accommodation to the Plaintiff were granted the accommodation denied to the Plaintiff, for reasons unknown. On equity grounds, discovery must be allowed to proceed on these issues, leading to a potential Motion to Amend based upon that discovery. This whistleblower is alleging malfeasance against the very individuals who will benefit from dismissal of this action without discovery on whether the policy even existed or was arbitrarily enforced.

The pleaded facts in the Complaint are straightforward.  Planning to begin studies at the Boston University School of Theology in the autumn of 2021, Plaintiff was required to undergo regular and patterned testing for Covid-19 infection as a condition of her enrollment. Although Plaintiff did not object in principle to the testing requirement, she sought an alternative testing

method other than the single option made available by Defendants. The Plaintiff, a person with a disability, repeatedly explained to Defendants that, upon the advice of her doctor, she could not subject herself to this particular Covid-19 testing method without gravely injuring her health.

The U.S. Food and Drug Administration ("FDA") recognizes several testing protocols for detection of Covid-19 in addition to the method mandated by Defendants, including protocols that Plaintiff could safely utilize without affecting the goals of the University's testing program. A reasonable accommodation to address Plaintiff's disability-related concerns was readily available. Yet for several months Defendants stubbornly failed to acknowledge that Plaintiff is a person with a disability and refused to engage in an interactive process as required under the Americans with Disabilities Act (ADA) to develop a reasonable accommodation that would allow her to comply with the University's testing requirement. Instead, Defendants imposed a suspension on Plaintiff, banning her from the University for her alleged "non-compliance" with the Covid-19 testing requirement.

Defendants repeatedly informed the Plaintiff that she would be barred from enrollment until she complied with the University's very specific and, for Plaintiff, demonstrably harmful, testing protocol. When the Americans with Disabilities Act was written by Congress, it very much recognized in its underlying findings that "overprotective rules and policies" in practice impose hardships on persons defined as disabled under the Act. That is the circumstance here. Under the doctrine of *Ubi Jus, Ibi Remedium*, the nostrum that "where there is a right, there must be a remedy," this Court must deny the Motion to Dismiss. Where the Plaintiff has been denied her rights by overprotective rules and policies, the ADA empowers the Court to act in equity to provide the remedy to address the deprivation of rights.

In their motion to dismiss, Defendants claim that Plaintiff's suspension from the University was limited to the period September 22, 2021 (when Defendants initially suspended Plaintiff's enrollment) to December 31, 2021, after which Defendants claim she was "free to enroll if she complied with BU's testing protocol." [p.5] Yet the University's restrictive and illegal testing policy remained in place until the end of the Spring 2022 semester, the very same policy with which Plaintiff had already asserted she could not safely comply without a reasonable accommodation. No accommodation was offered. Plaintiff was "free to enroll" if she were willing to sacrifice her health and to forego her rights as a person with a disability under federal law. Defendants blame Plaintiff for failing to enroll for the Spring 2022 semester, without even acknowledging her disability nor the reasons why her enrollment had been suspended the previous semester.

At no point during the Fall of 2021 or after did Defendants engage in a dialogue with Plaintiff to reach an accommodation that would allow her to pursue her studies while meeting the University's testing requirements. Although Plaintiff proposed reasonable accommodations to achieve these goals, Defendants refused to consider any of them. Plaintiff had little choice but to file a lawsuit in March 2022 in an effort to secure her rights under federal law.

No doubt, flexibility in its Covid-19 testing protocol was possible or permissible, despite the numerous alternative testing methods and the clear authority under federal law that the Defendants had a legal obligation to develop a reasonable accommodation for Plaintiff's disability utilizing one of these methods.[1] Defendants dismiss as "nonsense" [p. 9] the obviously discriminatory impact of their stubborn refusal to accommodate Plaintiff's disability.[2] It is

---

[1] Exhibit 1, in fact, indicates that they did develop a reasonable accommodation but denied it exclusively to the Plaintiff.
[2] Exhibit 1, in fact, indicates that they had actual knowledge of the discriminatory impact, and then furthered the misconduct by deploying that impact as a sword against a disabled individual.

4

hardly nonsensical for Plaintiff to refuse a medical intervention (a specific method of Covid-19 testing) that her treating physician had identified as harmful to her, particularly where alternative methods were widely available.

It is difficult to envision a more obvious violation of the ADA than the Defendants' behavior in this case. Not only did Defendants refuse to acknowledge that Plaintiff is in fact an otherwise qualified person with a disability for whom an accommodation under the ADA is in fact mandatory, but Defendants also refused to even engage with Plaintiff to arrive at such an accommodation, asserting that the University's unnecessarily inflexible testing protocol could simply not be challenged, even under federal law. The University simply refused to allow Plaintiff an opportunity to pursue her educational goals because it refused to accommodate her disability.

A. **Plaintiff Has Standing to Pursue Her Claims**

  1. **Defendants Voluntarily Ceased Its Covid-19 Testing Policy After Plaintiff Filed Her Lawsuit and Can Reimpose the Same Policy as Conditions Change.**

Defendants now contend that, because the Covid-19 testing policy was "dropped" on May 23, 2022, two months after Plaintiff filed her lawsuit and after the end of the Spring semester, that she now lacks standing to contest the wrongs committed by Defendants against her. Defendants would have this Court accept that the termination of the University's "asymptomatic testing program" soon after the filing of this lawsuit was simply coincidental, that it was unrelated to the legal concerns raised in Plaintiff's complaint or to Defendants' obvious violation of federal law in denying her enrollment for an entire year of academic study.

Oddly, Defendants blame Plaintiff for the timing of her filing, claiming "Plaintiff waited to file her Complaint in this case until the day before BU's Health Officer announced to the BU

5

community that the program was over." [pp. 15-16] Defendants absurdly assert that Plaintiff should have somehow known of the University's plans to suspend the Covid-19 testing policy before that decision had been announced, even though the filing of her complaint and an announcement of the suspension of the testing program were almost simultaneous. At no point did Defendants inform Plaintiff that a change in policy was under consideration, nor did Defendants inform her – even after the filing of her complaint – that she could now enroll without any testing requirement now or in the future. Instead, the timing of Defendants' announcement reinforces the perception that the policy change occurred *in response to Plaintiff's threat of a lawsuit.*

Defendants' arguments that the voluntary cessation doctrine does not apply here lack all credibility. Defendants boldly assert, without evidence, that, "The decision to end the [Covid-19 testing] program was based on BU's evaluation of relevant public health metrics and its operational needs." Yet the only basis offered for Defendants' decision to unilaterally terminate the testing requirement (as described in a May 10, 2022 *BU Today* newsletter article, but never detailed in more official communications from the Dean of Students) was based on the "continuing signs of medical experts' confidence that the pandemic is easing in the United States despite the infectiousness of the BA.2 variant" [Ex 3, p. 2]. The only "expert" cited is Dr. Anthony Fauci, who asserted that the U.S. is "out of the pandemic phase" of COVID. [Exhibit 3] [3]

---

[3] Indeed, this statement further affirms that the Defendants reserve the right to impose policies based upon evolving confidence levels of unnamed experts; one cannot and is not expected to order one's life under the ADA based on the declared right to rely on the arbitrary actions of unnamed actors. Property owners are required to prepare for snow clearance of disabled access ramps for winter notwithstanding the confidence of meteorologists that snow will not be falling in August.

Yet. Dr. Fauci had made this widely publicized claim on April 26, 2022, as reported by numerous mass media sources.[4] This was one month after the March 24, 2022 announcement by Dr. Judy Platt that the "asymptomatic Covid-19 testing program" would end on May 23, 2022. Further, Dr. Fauci contradicted his April 26, 2022 statement the very next day, telling *The Washington Post,* "The world is still in a pandemic. There's no doubt about that. Don't anybody get any misinterpretation of that. We are still experiencing a pandemic," Fauci said.[5] These contradictory claims provide no substantive basis for the Defendants' decision to end the testing requirement, yet this is all Defendants have provided.

As has been noted in Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S.298,307 (2012) "a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party…"   Allee v. Madrano, 416 U.S. 802 (1974) addresses this scenario. In Allee, suit was brought seeking injunction against improper conduct in a union context.  In that case, the Allee Court wrote that it cannot

> be argued that the case has become moot because appellees have abandoned their efforts as a result of the very harassment they sought retained by this suit. There can be no requirement that appellees continue to subject themselves to physical violence and unlawful restrictions upon their liberties throughout the pendency of the action in order to preserve it as a live controversy. In the face of appellants' conduct, appellees sought to vindicate their rights in the federal court. In June of 1967, they rechanneled their efforts from direct attempts at unionizing the workers to seeking the protection of a federal decree, and hence they brought this suit…. We may not assume that, because, during this period, they directed their efforts to the judicial battle, they have abandoned their principal cause….**It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise defendants 'would be free to return to their old ways'**." Allee, 416 US at 810-811, citing Gray v. Sanders, 372 U.S. 368 (1963).

---

[4] *See* "Fauci says U.S. is transitioning out of 'pandemic phase'," NBC News, April 27, 2022. https://www.cnbc.com/2022/04/27/fauci-says-us-is-transitioning-out-of-pandemic-phase.html . "The US is in 'transition phase' of pandemic, Fauci says," *CNN Health*, https://www.cnn.com/2022/04/27/health/fauci-covid-pandemic-phase/index.html.
[5] "U.S. no longer in 'full-blown' pandemic phase, Fauci says," *The Washington Post*, April 27, 2022. https://www.washingtonpost.com/health/2022/04/27/pandemic-phase-over-fauci-covid/.

The federal court had the opportunity to consider the issue of mootness in the context of the alleged Covid pandemic in <u>Boston Bit Labs, Inc. v. Baker</u>, 11 F. 4th 3 (1st Cir. 2021) <u>Boston Bit Labs</u> provides a litany of legal platitudes that make it clear that the case at bar is not moot, and that the Plaintiff retains standing to pursue this case. In fact, the First Circuit referred to the litany as "a brief primer." <u>Boston Bit Labs</u>, 11 F.4th at 8. By way of example, <u>Boston Bit Labs</u> noted that "Federal judges decide only live controversies that will have a real effect on real parties in interest." <u>Boston Bit Labs</u>, 11 F.4th at 8. The First Circuit noted that "the heavy burden of showing mootness is on the party raising the issue." <u>Boston Bit Labs</u>, 11 F.4th at 8. And, the First Circuit wrote, "And the key question 'is whether the relief sought would, if granted, make a difference to the legal interest of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)…If the answer is no, 'then the court is not really deciding a case…" <u>Boston Bit Labs</u>, 11 F.4th at 8.

In this case, as pled, the answer to the First Circuit's hypothetical question is an absolute "yes." Plaintiff obviously has a continuing interest in the outcome of this matter or she would not be dedicating her time and resources to it. The fact that she cannot make a decision about her future while Boston University has placed her in limbo by its own actions does not create mootness.

Defendants now assert that, simply because it has voluntarily suspended its illegal Covid-19 testing policy, Plaintiff is free to enroll for the Fall 2022 semester. Indeed, they criticize Plaintiff for not already re-enrolling, barely one month after cessation of the testing program. They assert here that this cessation of the testing requirement as of May 23, 2022 is permanent, never to be revived. Yet the assertion that the University will not in the future change course in

response to other, contradictory "continuing signs of medical experts" lacks any credibility. The Defendants' assurances to this Court that the voluntary cessation of the testing requirement is permanent and not subject to future revisions, that Dr. Fauci and others will not again change their recommendations or that the University will not perceive a need for Covid-19 testing in the future based on the opinions of these same unnamed "medical experts" are worthless. Defendants have provided no credible basis for its initial decision to end the testing requirement, but now ask this Court to accept their hollow assurances it will never revive the policy in the future. If they are so certain of this position, and are ready to stand behind it, let them agree to a consent decree stating just that; they have not made such an offer.

Indeed, "medical expert" opinion regarding routine Covid-19 testing remains uncertain. Guidance published by the Centers for Disease Control ("CDC") on May 27, 2022, less than two weeks after the termination of the University's Covid-19 testing program, reiterated its earlier (February 11, 2022) "Guidance for Institutions of Higher Education (IHEs)," which among other recommendations proposes that:

- IHEs should implement an entry screening testing strategy[6] at minimum for people who are not up to date with their vaccines prior to the beginning of each term, including those who live off campus.
- IHEs should initiate increased serial screening testing among students, faculty, and staff at a minimum for those who are not up to date with their vaccine, in addition to rapid case investigation and contact tracing in the context of moderate, substantial, or high community transmission.

It is by no means certain, or even likely, that the University has permanently ended its Covid-19 testing requirement. In the foreseeable event that Defendants revive their "dropped" Covid-19 testing policy, it has made no commitment to revising the policy to accommodate the

---

[6]Signficantly, the CDC's "Testing for SARS-COV-2 Infection" guidance notes, "Many types of tests are used to detect SARS-CoV-2…" https://www.cdc.gov/coronavirus/2019-ncov/hcp/testing-overview.html#TestingInfection. For Defendants, however, only a single type of test is permissible.

legitimate needs of Plaintiff and others with similar disabling conditions. There is more than a reasonable expectation that the behavior challenged in Plaintiff's complaint will be repeated in the future.

Plaintiff has not contested the University's now suspended policy of routine asymptomatic testing for Covid-19. She has contested the application of that policy to her as a person with a disability who cannot comply with an inflexible testing regimen. She has never refused testing for Covid-19 but simply sought an alternative means of testing as a reasonable accommodation. The Defendants have provided no indication that, if the policy is revived in response to future conditions, that it will comply with the requirements of the ADA. This is the basis for her complaint.

### 2. Defendants' Illegal Actions are Capable of Repetition and Will Evade Judicial Review If Plaintiff's Complaint is Dismissed.

Defendants' voluntary cessation of the Covid-19 testing policy, a policy which clearly had the effect of discriminating against Plaintiff and others with similar disabilities, can be revived at any time the Defendants choose to do so. Without relief from this Court in the form of declaratory and injunctive relief, Plaintiff can be subjected to the same inflexible policy, and to the Defendants' stubborn refusal to comply with the ADA, at any point if she were to re-enroll at the University.

Defendants ask this Court to accept that their decision to end the Covid-19 testing policy is permanent, even though it has provided no credible scientific, medical or public health rationale for the change beyond "BU's evaluation of relevant public health metrics and its operational needs." Such an "evaluation" can be altered at any point in response to future

predictions and assertions from Dr. Fauci and the unnamed "public health experts" on whose advice the University claims to rely.

Defendants do not contest Plaintiff's core concerns about the testing policy and the University's inflexible and discriminatory application of it. They have not acknowledged that Plaintiff is a person with a disability who is otherwise qualified to attend the University but for its Covid-19 testing policy, for which Defendants have refused to even offer any accommodation. Defendants' behavior leading up to the filing of this lawsuit, which included a refusal to comply with the most basic provisions of the ADA, effectively barred Plaintiff from enrollment based entirely on her disability status.

Defendants blame Plaintiff for waiting too long to file her lawsuit and criticize her for not being currently enrolled, despite the fact that Plaintiff was still subject to the (now "dropped") discriminatory Covid-19 testing policy and could not possibly comply with it at the time she filed her lawsuit. Defendants' subsequent cessation of the testing policy after the end of the Spring 2022 semester, after depriving Plaintiff of two full semesters of study, has provided only a short, potentially "transitory" window when she might consider enrollment after Defendants suspended her.

It is not "mere speculation" that Defendants can re-impose the discriminatory testing policy at any time, even if it is not currently mandating weekly testing of students. As noted, the CDC still recommends "serial screening" at institutions of higher learning, which would include Plaintiff if again imposed at the University. Defendants have provided no substantive basis for why it has currently discontinued the routine testing requirement, beyond citing unnamed "medical experts' confidence that the pandemic is easing." Presumably the CDC is among those "medical experts" on whose opinions Defendants rely. That Defendants do not currently rely on

CDC guidance on this point is based on a subjective evaluation of that guidance, which can change at any time, without further explanation.

In the foreseeable event that the testing requirement is revived after Plaintiff is re-enrolled at the University, and without action from this court, she will again be subjected to the same illegal application of the testing requirement that forced her previous suspension. Plaintiff faces a significant and obviously foreseeable threat of further discrimination by Defendants.

Thus, Plaintiff clearly had standing to bring this action, and subsequent voluntary actions by Defendants' to temporarily halt their discriminatory behavior does not in any way render this complaint moot. The Defendants have not identified a flaw in the pleadings, but rather has asked this Court to simply take its word that its prior wrongful policy is now somehow in abeyance. Defendants have not even admitted to this Court that its now "dropped" testing policy was unquestionably wrong or why it should be not subject to a consent decree to prevent its recurrence.

The Motion to Dismiss violates F.R.C.P. 12 by asking this Court to rely upon facts not found within the four corners of the Complaint and by asking this Court to adjudicate what was reasonable or not reasonable on a Motion to Dismiss. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Because Boston University relies upon vague allegations and unsubstantiated statements to vary a well-pled Complaint, the Motion to Dismiss must be DENIED.

 3.     **The Court Should Permit Discovery on the Whistleblower's Statement and Allow a Motion to Amend the Complaint before taking further Action on Defendants' Motion to Dismiss**

Exhibit 1 is deeply troubling because it suggests a whole different level to the discrimination pleaded and suggests a strong ulterior motive for the Defendants' Motion to Dismiss; it has a rank flavor about it. More deeply, it is troubling because it rings truer than the notion that the Defendants acted in good faith toward the Plaintiff and took the steps it did in light of clearly unreasonable behavior. It also presents facts and suggestions that would be known to Boston University but not the Plaintiff, and the information should be verifiable. This Court, at the very least, and in equity, should deny the Motion to Dismiss without prejudice to allow discovery to explore this issue, and to allow a Motion to Amend if the discovery provides sufficient grounds under F.R.C.P. 15.

For the Foregoing reasons, the Motion to Dismiss must be DENIED.

                        Respectfully Submitted,

                        **Caitlin Corrigan**

                        By her attorney,

                        /s/Robert N. Meltzer_____
                        Robert N. Meltzer, BBO #564745
                        The Mountain States Law Group
                        Wheelhouse at the Bradford Mill
                        33 Bradford Street
                        Concord, MA 01742
                        Phone: (978) 254 6289
                        inbox@mountainstateslawgroup.com

and.

/s/Mary Holland_____
Mary Holland, Esq.
mary.holland@childrenshealthdefense.org
Robert F. Kennedy, Jr. Esq.
Rfk.assitant@childrenshealthdefense.org
Children's Health Defense
852 Franklin Ave. Suite 511
Franklin Lakes, NJ 07417
Phone: 202-854-1310

July 12, 2022

CERTIFICATE OF SERVICE

I hereby certify that on this day I served a copy of the foregoing by mailing the same by the electronic filing system of the US District Court.

/s/Robert N. Meltzer_____

July 12, 2022