UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CAITLIN CORRIGAN,<br><br>               Plaintiff,<br><br>     v.<br><br>BOSTON UNIVERSITY,<br><br>               Defendant. | Case No. 22-cv-10443 |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                    **October 19, 2022**

## I.  Introduction

Plaintiff Caitlin Corrigan ("Corrigan") has filed this lawsuit against Defendant Boston University ("the University" or "BU") alleging violations of Title III of the Americans with Disabilities Act ("ADA").  Before this Court is BU's motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).  D. 11.  For the reasons stated below, the Court ALLOWS the motion.

## II.  Standard of Review

### A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction.  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)) (internal

1

quotation marks omitted). When confronted with such a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522). The Court, however, may widen its gaze and look beyond the pleadings to determine jurisdiction. Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the Court can "rely on facts outside of the pleadings" to decide a Rule 12(b)(1) motion). Further, "[w]hen faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995). Most relevantly for our purposes here, "[t]he First Circuit has observed that it is appropriate to consider mootness challenges as challenges to a court's subject-matter jurisdiction, and that '[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1).'" Trafford v. City of Westbrook, 669 F. Supp. 2d 133, 140 (D. Me. 2009) (second alteration in original) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001)).

### III.   Factual and Procedural Background

In the wake of the COVID-19 pandemic, BU adopted campuswide protocols that would allow it to continue operations during the public health crisis. D. 12 at 3. One of those protocols involved requiring its students, faculty, and staff to undergo regular, asymptomatic COVID-19 testing, starting in the fall of 2020. Id. BU also opened an on-campus PCR testing lab and created Back2BU, a website dedicated to disseminating information related to the pandemic and the university's protocols to the BU community. Id. Under the protocols, the only testing method allowed was a COVID-19 anterior nares PCR test, which "requires only shallow swabbing" of the

nose with a Puritan swab that contains ethylene oxide. D. 1-4 at 2–3. No other method of testing for the virus was accepted. D. 1 ¶ 5.

In the fall of 2021, Corrigan matriculated at BU as a graduate student in the School of Theology. Id. ¶ 4. Corrigan submitted an exemption request from the COVID testing to BU in late September. D. 1-4 at 2. Accompanying this request was supporting materials from Corrigan and her healthcare providers indicating the sensitivity of her nasal cavities, which required her to be provided "a reasonable accommodation to do another test that doesn't involve shoving something into [her] nasal cavities." Id. Instead of the anterior nares test, Corrigan proposed that she be allowed to switch the mode of testing to a saliva PCR test. D. 1-2 at 2.

Dr. Lorre Wolf ("Wolf"), BU's Director of the Office of Disability and Access Services and the 504 Coordinator, reviewed the materials and had a meeting with Corrigan via Zoom on September 28, 2021. D. 1-4 at 2. At this meeting, Wolf clarified that BU did not require a nasopharyngeal swab test, but rather an anterior nares test, which requires only shallow nasal swabbing. Id. Wolf also offered to demonstrate the anterior nares testing protocol for Corrigan during the call, and Corrigan raised concerns about stress from taking the test and introducing chemicals into her body. Id. In an email dated September 29, 2021, Wolf denied Corrigan's request for an accommodation, concluding that Corrigan's "several potentially disabling medical conditions" and concerns regarding stress and the introduction of chemicals into her system did not substantiate "any connection between a disability and an associated need" for an exemption of BU's testing protocol. Id. Wolf further mentioned that there was no alternative to BU's testing protocol that would ensure the health and safety of the BU community. Id. at 2–3. Lastly, Wolf offered to discuss adjustments that could assist Corrigan in complying with the anterior nares testing method. Id. at 3.

In response to the denial, Corrigan followed up in early October 2021 with additional materials, specifically describing her concerns about the presence of ethylene oxide in the Puritan swabs used for anterior nares testing.  Id.  These additional materials were reviewed by not only Wolf, but also by Dr. Judy Platt ("Platt"), BU's Chief Health Officer and Executive Director of Student Health Services.  Id.  On October 13, 2021, Dean of Students Kenneth Elmore ("Elmore") communicated via email to Corrigan a second denial of her request for an accommodation.  D. 1-2 at 2.  The documentation Corrigan provided, according to Elmore, did "not provide relevant and applicable scientific data, medical data, or evidence to call into question a risk of harm based upon the limited use of weekly anterior nares testing."  Id.  Finally, Elmore requested that Corrigan begin complying with the testing regimen immediately and to inform him of her plans to comply by 5:00 p.m. that evening, and if he did not hear from her, his office would follow up with her regarding her "continued enrollment" at BU.  Id.

The next day, October 14, 2021, Corrigan received via email a Notice of University Suspension Due to Non-Compliance with COVID-19 Testing Mandate from Elmore.  D. 1 ¶ 13; D. 1-2 at 3.  Per the notice, Corrigan was suspended from BU, effective immediately, until December 31, 2021, and was prohibited from entering any BU property.  D. 1-2 at 3.  The notice also explained how Corrigan could return for the spring 2022 semester and outlined her right to appeal.  Id. at 3–4.  Corrigan promptly appealed her suspension on October 19, 2021.  D. 1-4 at 2.  Associate Provost for Graduate Affairs Daniel Lee Kleinman ("Kleinman") dismissed the appeal and affirmed the suspension on November 5, 2021.  D. 1 ¶ 20; D. 1-4 at 2–3.

On December 9, 2021, Corrigan appealed Kleinman's dismissal to Professor Jean Morrison ("Morrison"), BU's Provost and Chief Academic Officer.  D. 1-6 at 2.  Morrison denied the appeal on January 6, 2022.  Id. at 3; D. 1-4 at 4.  On January 21, 2022, counsel for BU Christine Collins

4

("Collins") indicated to Corrigan's counsel that BU's internal grievance process had been exhausted. D. 1-7.

Corrigan did not return to BU for the spring 2022 semester and instituted this action on March 23, 2022. D. 1. The following day, March 24, 2022, BU announced that its mandatory testing program for students would end on May 13, 2022. D. 12-1 at 2–3. In the announcement, the University further explained that BU's asymptomatic testing program for the entire BU community would also end, as of May 23, 2022. Id. at 2; 12-2 at 2. Platt reaffirmed the sunsetting of the mandatory testing program in another communication issued on April 29, 2022. D. 12-2 at 2. As of May 23, 2022, no mandatory COVID-19 testing program at BU remains in place. D. 12 at 5.

BU has now moved to dismiss Corrigan's complaint. D. 11. The Court heard the parties on the pending motion and took the matter under advisement. D. 22.

## IV. Discussion

### A. Mootness

BU argues Corrigan's claims have become moot because its mandatory testing policy is no longer in place. D. 12 at 10–16. Mootness has a close relationship with standing, "given [the Supreme Court's] repeated statements that the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Steir v. Girl Scouts of the USA, 383 F.3d 7, 15 (1st Cir. 2004) (alteration in original) (quoting Becker v. Fed. Election Comm'n, 230 F.3d 381, 386 n.3 (1st Cir. 2000)) (internal quotation marks omitted). This requirement also stems from Article III of the United States Constitution, which requires "[f]ederal judges to decide only *live* controversies that will have a real effect on real parties

in interest." Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021) (emphasis in original) (citations omitted).  As part and parcel of this requirement, if the requisite personal interest is at any point extinguished during the proceedings, "the mootness doctrine generally stops [the federal judiciary] from pumping new life into the dispute (regardless of how fascinating the party's claims are by 'oust[ing]' the federal court courts of 'jurisdiction' and 'requir[ing]' us to 'dismiss[]' the case."  Id. (citing cases) (second, third, and fourth alterations in original).

Demonstrating mootness is no easy task, as the party raising the issue carries a "heavy" burden.  ConnectU LLC v. Zuckerberg, 522 F.3d 82, 88 (1st Cir. 2008) (citing cases).  Ultimately, "the key question 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).'"  Bos. Bit Labs, Inc., 11 F.4th at 8 (quoting Air Line Pilots Ass'n, Int'l, 897 F.2d at 1396).  "If the answer is no, 'then the court is not really deciding a "case," and (if a federal court) it is therefore exceeding the power conferred on it by . . . the Constitution.'" Id. (quoting Air Line Pilots Ass'n, Int'l, 897 F.2d at 1396).

Returning to the case at bar, Corrigan was required to comply with BU's mandatory testing program.  After failing to do so, she was suspended from the University and filed suit.  In her complaint, she requested four forms of relief, including (1) an order requiring BU to accept her accommodation or to, alternatively, engage in an interactive process with her to secure a reasonable accommodation; (2) a declaratory judgment stating that BU violated her rights as a disabled individual by denying her accommodation request and failing to engage in an interactive dialogue with her regarding her request; (3) a second declaratory judgment stating that BU's mandatory testing program violates the ADA; and (4) damages, costs, and attorneys' fees.  D. 1 at 20.  BU has since ended its mandatory testing program, which ended as of May 23, 2022.

As to Corrigan's request for an order requiring BU to accept her accommodation request or to engage in an interactive dialogue regarding the same, it is plainly moot. Corrigan essentially requests injunctive relief, but a "reason for mootness is that a court cannot provide meaningful relief to the allegedly aggrieved party." Am. Civ. Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops ("ACLUM"), 705 F.3d 44, 53 (1st Cir. 2013). With the termination of BU's mandatory testing program, however, "there is no ongoing conduct to enjoin." Town of Portsmouth v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016).

Likewise, Corrigan's requests for declaratory relief are also moot. Generally, "issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory." ACLUM, 705 F.3d at 53 (citing cases). Such a claim withstands a mootness challenge only if "there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lewis, 813 F.3d at 59 (quoting ACLUM, 705 F.3d at 54) (internal quotation marks omitted). No such immediacy or reality exist here. BU's mandatory testing program ended on May 23, 2022, and nothing in the record suggests that the program will be revived—let alone with the sufficient immediacy and reality to overcome a mootness challenge. Indeed, Corrigan's only refrain is that BU can reimpose its policy at any time. See generally D. 14. Yet, the First Circuit has been clear: "It is not enough for a plaintiff to assert that she 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant - the prospect of harm must have an 'immediacy and reality.'" Steir, 383 F.3d at 16 (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)). The First Circuit has routinely found claims lacking the requisite immediacy and reality moot. See, e.g., Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 192 (1st Cir. 2022) (dismissing claim against university's COVID-19 vaccination policy as moot, where plaintiff students had graduated or transferred, thus "extinguish[ing] any immediate and real

7

effect that the challenged policies once had on the students" (citing cases)); Bos. Bit Labs, Inc., 11 F.4th at 9 (finding dispute of whether the governor of Massachusetts could reimpose COVID-19 executive order affecting the opening of plaintiff's business "neither immediate or real," where the governor issued a second executive order days after the plaintiff filed suit allowing plaintiff's business to open (quoting Lewis, 813 F.3d at 59) (internal quotation marks omitted)); Lewis, 813 F.3d at 59 (describing as "neither immediate nor real" the controversy surrounding a bridge toll collection scheme, where the state legislature subsequently repealed the tolls (quoting ACLUM, 705 F.3d at 54) (internal quotation marks omitted)); Steir, 383 F.3d at 16 (affirming finding that Title III claim was moot where "there was no live controversy and consequently no prospective relief of a personal nature that the district court could award").

Corrigan's request for "damages, costs, and attorneys; fees," along with her request for "[a]ny other relief deemed appropriate," also do not rescue her claim. Corrigan does not request a specific amount of damages, which the First Circuit found insufficient to keep a case alive where it would otherwise be moot. Harris, 43 F.4th at 192–93. Similarly, "it is well established that an 'interest in attorneys' fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" Id. at 193 (quoting Davidson v. Howe, 749 F.3d 21, 27 n.7 (1st Cir. 2014)). "The same is true of [a] claim for costs." Id. Finally, the First Circuit has made clear that a "request for 'any other relief [the] Court deems proper' cannot operate to save [an] otherwise moot action." Id.

The Court, therefore, concludes that Corrigan's claims are moot. That otherwise would be the end of the matter, but Corrigan relies upon two exceptions to the mootness doctrine contending that both apply. They do not here.

8

### 1. *Voluntary-Cessation Exception*

Normally, even if a defendant ceases their challenged conduct in the course of litigation, "that does not necessarily moot the case." Tandon v. Newsom, __ U.S. __, 141 S. Ct. 1294, 1297 (2021). In those instances, the voluntary-cessation exception can save a claim from a mootness challenge. The exception applies "when a 'defendant voluntary[ily] ceases the challenged practice' in order to moot the plaintiff's case, . . . and there exists 'a reasonable expectation that the challenged conduct will be repeated following the dismissal of the case.'" Lewis, 813 F.3d at 59 (alteration in original) (quoting ACLUM, 705 F.3d at 54, 56). The application of the voluntary-cessation exception is "highly sensitive to the facts of a given case," ACLUM, 705 F.3d at 56 (citing Already, LLC v. Nike, Inc., 568 U.S. 85, 96–97 (2013)), and the burden is on the party invoking mootness, Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) (citing United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).

The Court finds the voluntary-cessation exception inapplicable for two reasons. First, "the exception ordinarily does not apply where the voluntary cessation occurred for reasons unrelated to the litigation." Lewis, 813 F.3d at 59 (citing ACLUM, 705 F.3d at 55). Here, Corrigan suggests BU's termination of the mandatory testing program was a response to her suit, D. 14 at 5, while BU states its termination was based on an "evaluation of relevant public health metrics and its operational needs," D. 12 at 14. The record supports the latter. Prior to its March 24, 2022 announcement regarding the end of the mandatory testing program, BU had already begun to wind down several of its COVID-19 protocols. On March 1, 2022—three weeks before Corrigan initiated this action—BU issued a communication to the entire BU community, ending the mandatory testing requirement for faculty and staff and the mask requirement in most areas on

9

campus.  Update on COVID-19 Protocols, https://www.bu.edu/dos/2022/03/01/update-on-covid-19-protocols/ (last visited Oct. 19, 2022).  This suggests that the termination of BU's mandatory testing program for students was "an event that was scheduled before the initiation of the litigation, and [was] not brought about or hastened by any action of the defendant."  ACLUM, 705 F.3d at 55.  Further, Platt's March 24, 2022 communication highlights that "we have continued to experience favorable [COVID-19] trends at Boston University with little to no indication of severe illness or hospitalizations due to COVID-19," D. 12-1 at 2, suggesting that BU ended the program "not to avoid a court judgment, but in response to the progress made in battling the pandemic."  Bos. Bit Labs, Inc., 11 F.4th at 10 (citing S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring)).

Second, for the voluntary-cessation exception to apply, BU would not need to reimpose the "selfsame" program, but it "would need to impose a [program] 'similar' enough to the old [program] to present substantially the same legal controversy as the one presented by [Corrigan's] complaint."  Resurrection Sch. v. Hertel, 35 F.4th 524, 529 (6th Cir. 2022) (quoting Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 662, 662 n.3 (1993)) (internal quotation marks omitted).  On this issue, the Sixth Circuit's analysis in Resurrection Sch. v. Hertel proves instructive.  There, the *en banc* Sixth Circuit was confronted with a preliminary injunction against Michigan's statewide mask mandate, which was repealed almost a year before the case reached the court.  Id. at 527.  In finding the voluntary-cessation exception inapplicable, the court found "no reasonable possibility" of a similar enough mask mandate being reimposed.  Id. at 529.  First, the court explained that the mask mandate was not rescinded in response to the lawsuit, but rather after "high vaccination rates, low case counts, new treatment options, and warmer weather."  Id.  Second, the court cited the dramatic change in circumstances since the mask

mandate was originally imposed—namely, that at that time "nobody was vaccinated and treatments were less effective than they are now." Id.

Along the same lines, BU implemented its mandatory testing program in the fall of 2020—the height of the pandemic. D. 12 at 3. After almost two years in place, BU retired the program not in response to Corrigan's lawsuit, but rather because of more favorable trends in regard to COVID-related illnesses and hospitalizations. D. 12-1 at 2; see Saya v. Mayor of Nashua, et al., No. 21-cv-1069-PB, 2022 WL 2527817, at *1 (D.N.H. July 7, 2022) (concluding plaintiff's challenge to the city's now-rescinded mask mandate could not be saved by the voluntary cessation exception, because "the decision to rescind the mask mandate was made with no discernable desire to avoid this litigation" and was made "after the successful introduction of vaccines for COVID-19").

In arguing otherwise, Corrigan points to statements by Dr. Anthony Fauci ("Fauci"), Chief Medical Advisor to the President, explaining that the pandemic is ongoing and the Center for Disease Control and Prevention's ("CDC") current guidance for institutions of higher education to implement screening testing for unvaccinated students, faculty, and staff. D. 14 at 6–9. She suggests that these are proof positive of "the foreseeable event that Defendants [will] revive their 'dropped' COVID-19 policy." Id. at 9. But this purported proof fails to contravene the record here as to BU ending the program in response to "relevant public health metrics and its operational needs." D. 12 at 14. To the contrary, they reinforce the notion that BU acted in response to progress made combatting the pandemic. In the article from which Corrigan cites Fauci's statement, he is also quoted as saying, "Right now, we're at a low enough level that I believe we're transitioning into endemicity. . . . We're not in the full-blown explosive pandemic phase." Joel Achenbach & Bryan Pietsch, U.S. No Longer in "Full-Blown" Pandemic Phase, Fauci Says, Wash.

11

Post (Apr. 27, 2022), https://www.washingtonpost.com/health/2022/04/27/pandemic-phase-over-fauci-covid/ (last visited Oct. 19, 2022).  Similarly, relevant CDC guidance, which Corrigan cites, does not recommend institutions of higher education implement the same scale of testing BU had previously.  See D. 14 at 9.

For all of these reasons, the voluntary-cessation exception to the mootness doctrine does not apply here.

### 2. *Capable-of-Repetition-Yet-Evading-Review Exception*

Lastly, Corrigan relies upon the capable-of-repetition-yet-evading-review exception, which also fails.

This exception to mootness "applies only in exceptional circumstances."  City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (citing DeFunis v. Odegaard, 416 U.S. 312, 319 (1974)).  "[A] plaintiff [must] show that '(1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'"  ACLUM, 705 F.3d at 57 (quoting Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 89 (1st Cir. 2002)).

Regarding the first requirement, Corrigan's challenge cannot be said to be an inherently transitory claim.  See Harris, 43 F.4th at 194 (concluding that "[c]hallenges to university-vaccination policies are not among or closely analogous to the 'inherently transitory' claims that the Supreme Court has previously found to fit this exception." (citing ACLUM, 705 F.3d at 57 ("collecting cases involving elections, pregnancies, and temporary restraining orders")).  More fundamentally, there is no "realistic threat that no trial court ever will have enough time to decide the underlying issue[]."  Cruz v. Farquharson, 252 F.3d 530, 535 (1st Cir. 2001) (citing Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975)).  Indeed, BU's mandatory program was in place for almost

12

two years. Daley, 292 F.3d at 89 (finding a regulation in place "for more than a year" was not capable of evading review, as there was "considerable time" to challenge it).

Regarding the second requirement, the Court returns to its earlier analysis. Here, Corrigan cannot establish a "reasonable expectation" or "demonstrated probability" that she will be subjected to the same "alleged illegality." Davidson, 749 F.3d at 26 (quoting ACLUM, 705 F.3d at 57) (internal quotation marks omitted); see also Saya, 2022 WL 2527817, at *1 (finding no "apparent reason why" a now-rescinded city mask mandate would be revived, where COVID-19 cases had fluctuated with no further action from city officials and vaccine, vaccine boosters, and treatments against COVID-19 had been introduced). Mere speculation that a defendant will repeat challenged conduct cannot rescue an otherwise moot claim. See Harris, 43 F.4th at 195 (holding that the capable-of-repetition-yet-evading-review exception could not save former students' challenge to university's vaccination requirement, because the "conceivable" possibility that they return to the university "rest[ed] on 'speculation' about some future potential event" (citations omitted)); Newspaper Guild, Local 105 v. Ottaway Newspapers, 79 F.3d 1273, 1278 (1st Cir. 1996) (noting that "[w]hile the Publisher may determine that additional layoffs are necessary in its post-consolidation operation, there is no demonstrated probability, . . . that additional layoffs are likely or that Guild members would be among those targeted." (internal citations and quotation marks omitted)); World Gym, Inc. v. Baker, 474 F. Supp. 3d 426, 431 (D. Mass. 2020) (concluding that "[a]lthough it remains possible that Massachusetts will experience a resurgence of rapid COVID-19 cases, it cannot be said that there is a 'demonstrated probability' that one will occur and, if one does occur, that the Governor will execute the same orders." (quoting Davidson, 749 F.3d at 26)).

Consequently, the capable-of-repetition-yet-evading-review exception has no application here, Corrigan's claims are dismissed as moot, and BU's Rule 12(b)(1) motion to dismiss is allowed.[1]

## V.     Conclusion

For the foregoing reasons, the Court ALLOWS BU's motion to dismiss, D. 11.

**So Ordered.**

                                                                /s/ Denise J. Casper
                                                                United States District Judge

---

[1] Because the Court grants BU's 12(b)(1) motion to dismiss on mootness grounds, it does not reach BU's related argument that Corrigan had no standing to bring her claim. See, e.g., Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 66 (1997) (noting that the Court "need not definitively resolve the issue" of standing and instead inquire into mootness); Dubois v. U.S. Dep't of Agric., 20 F. Supp. 2d 263, 267 n.3 (D.N.H. 1998) (citing case for proposition that "standing to sue need not be determined where case is moot") or BU's Rule 12(b)(6) motion to dismiss. See, e.g., Naing Aung v. Prettenhoffer, 544 F. Supp. 3d 173, 186 (D. Mass. 2021) (granting "Hanover's 12(b)(1) motion to dismiss for lack of jurisdiction" and noting that since "the Court lacks jurisdiction to hear the case, there is no need to reach [Defendant's Rule] 12(b)(6) motion to dismiss"). To the extent that, in her opposition to the motion to dismiss, Corrigan requested leave to amend the complaint to include reference to an email, which alleges certain individuals at BU were allowed to use an alternative testing method, D. 14 at 13; D. 14-1, the request is futile as this Court is without the requisite jurisdiction. Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 894 (2d Cir. 1983) (affirming that "[b]ecause it was without jurisdiction, the judge appropriately denied the request to amend the complaint"). Even if the Court were to reach the merits of the motion to amend, it is futile as the proposed amendment does not cure the mootness of her claims.